BOGGESS & HARKER
D. BRIAN BOGGESS, ESQ.
Nevada Bar Number 4537
7495 West Azure Drive, Suite 250
Las Vegas, Nevada 89130
(702) 233-5040 Telephone
(702) 233-2209 Facsimile
bboggess@boggesslawgroup.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GUADALUPE OLVERA, an individual; and THE GUADALUPE OLVERA FAMILY TRUST, by and through its Trustee, Rebecca Schultz, | CASE NO.    2:14-cv-01298-GMN-NJK |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' OPPOSITION TO DEFENDANT CATHY ELLIOTT'S MOTION FOR SUMMARY JUDGMENT** |
| JARED E. SHAFER, an individual; PROFESSIONAL FIDUCIARY SERVICES OF NEVADA, INC., a Nevada corporation; AMY VIGGIANO DEITTRICK, individually and doing business as AVID BUSINESS SERVICES; PATIENCE BRISTOL, an individual; WELLS FARGO BANK, N.A., a National Association; EVE S. MILLS, an individual; SUSAN BULL, an individual; CENTER FOR GUARDIANSHIP CERTIFICATION, INC., a Pennsylvania non-profit corporation; FIRSTSERVICE RESIDENTIAL, NEVADA, LLC, a Nevada limited liability company; CATHY ELLIOT, an individual; MARGARET JOHNSON, aka MARGO JOHNSON, an individual; DOES I through XX and DOE ENTITIES I through XX, inclusive, | |
| Defendants. | |

COME NOW the Plaintiffs, Guadalupe Olvera and The Guadalupe Olvera Family Trust, by and through their attorneys, D. Brian Boggess, Esq. and Boggess & Harker, and hereby submit their Opposition to the Motion for Summary Judgment filed by Defendant Cathy Elliott (hereafter "Defendant" or "Elliott").

This Opposition is made and based on the pleadings and papers on file herein, the affidavits and points and authorities attached hereto, as well as any oral argument presented at the hearing on this matter.

## POINTS AND AUTHORITIES

### I.

### Introduction

Elliot seeks summary judgment and to have the Plaintiffs' First Amended Complaint against her be dismissed on a number of grounds.  Elliott's primary contention is that the Plaintiffs' Complaint contains claims which are time-barred or for which insufficient factual information has been included to establish a cause of action against her.

As will be argued below, the Plaintiffs claims are not time-barred, and the allegations are sufficient to provide Elliot notice of the claims against her.

### II.

### Statement of Facts and Procedural History

The facts of this matter are as set forth in the Declaration of Rebecca Schultz attached hereto as Exhibit "1" and the other Exhibits attached hereto.  Those facts are briefly summarized here.

Rebecca Schultz is a resident of Santa Cruz County, California.  Upon information and belief, Defendant Cathy Elliott is a resident of Clark County, Nevada.

Guadalupe Mena Olvera is a now-deceased Veteran who served in the United States Army from August 15, 1941 through October 4, 1945.  He also served in the United States Air Force between August 29, 1946 and August 28, 1949.  Mr. Olvera was originally a Plaintiff in this litigation, and his treatment before and during his guardianship proceedings lie at the heart of the instant action.

Ms. Schultz is Mr. Olvera's only child.  In 2008 and 2009, Mr. Olvera and his wife, Carmela Olvera, were residents in Sun City Anthem, and regularly interacted with Defendants Elliot, Johnson and their employer, FirstService Residential, Nevada, LLC ("FSR").

On November 2, 2009, Mrs. Olvera, Mr. Olvera's wife and the guardian of his person, died in Henderson.

Shortly thereafter, Defendants Elliot and Johnson, with the knowledge of Defendant FSR, kidnaped Mr. Olvera, removed him from his home and proceeded to convert many of his assets

to their own use and benefit. Defendants Elliot and/or Johnson kept Mr. Olvera hidden from his family, and did not give up control of Olvera until forced to do so by the Eighth Judicial District Court in Clark County, Nevada.

During the time prior to Mrs. Olvera's death, Defendant Elliott wrote herself checks on Mr. Olvera's account on July 18, 2008, November 1, 2008, March 18, 2009 and August 11, 2009, for the total sum of $2,413.75. *See Exhibit "2", attached hereto.* These checks in Exhibit "2" were written by someone other than Mr. or Mrs. Olvera, as the handwriting is not that of either of Ms. Schultz's parents. As a receptionist or greeter for FSR, Cathy Elliott had no business seeking or accepting money from senior citizens, one of whom was already under a guardianship.

When Mr. Olvera disappeared following Mrs. Olvera's death, Ms. Schultz contacted various Clark County agencies to seek help. She was ultimately referred to Defendant Jared Shafer, who agreed to assist me in serving as "temporary" guardian. Assured by Mr. Shafer that his involvement was "temporary", she retained Elyse M. Tyrell, Esq., and paid Ms. Tyrell to prepare the documentation making Mr. Shafer the temporary guardian over my father. She did not know at the time that Ms. Tyrell was actually one of Mr. Shafer's attorneys.

Between his appointment on December 2, 2009 and termination of his guardianship on April 25, 2013, Defendant Shafer caused at least $300,000.00 to be charged to and paid out of Mr. Olvera's estate.

During the period of that guardianship, Ms. Schultz was unable to access her father's bank account records, including the copies of checks contained in Exhibit "2", attached hereto.

It was not until the California Courts terminated the guardianship over Mr. Olvera on April 25, 2013, that Ms. Schultz was able to begin gathering the documents and records pertaining to her father, the Trust and what had really happened to him. It was not until after that date that she learned that Ms. Elliott had written herself checks on Mr. Olvera's account, and that she had taken other assets from Olvera during the time that she had taken him from his home and family.

### III.

### Argument

A.   <u>Legal Standard</u>.

The Federal Rules of Civil Procedure establish the threshold which must be met in order to grant a summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*FRCP 56(c) (2015).*  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert denied, 516 U.S. 1171, 116 S. Ct. 1261, 134 L. Ed. 2d 209 (1996); *Pearl v. Regional Transportation Comm'n,* 2007 U.S. Dist. Lexis 59253 (Filed August 9, 2007).

The adjudication of a summary judgment motion is not a "trial on affidavits". *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Credibility determinations and weighing of the evidence are solely jury functions. *Id.*, 477 U.S. at 255.  When considering a summary judgment motion, the evidence of the non-movant is to be believed, and all reasonable inferences are to be drawn in her favor. *Miller v. Baxter Healthcare Corp.*, 165 Fed Appx. 550 (9th Cir. 2006) Inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Not only must the court infer all reasonable inferences, but must resolve all doubts in favor of the non-movant. *Hartman v. Pena*, 914 F. Supp. 225, 229 (N.D. Ill. 1995).

The proper inquiry on a summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1185 (Fed. Cir. 1993).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering the evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248; *Pearl*, 227 U.S. Dist. LEXIS 59253 at 2.

Given the volume and quality of evidence presented by the Plaintiff, as the non-moving party, there are clearly genuine issues of material fact which make this case one for which summary judgment is inappropriate. The evidence presented, taken in a light most favorable to the Trust, and applying all reasonable inferences therefrom in its favor, establishes a number of genuine issues of material fact which preclude the entry of summary judgment.

B.    Plaintiff's Causes of Action against Defendant Elliot are Not Untimely or Time-Barred.

Defendant Elliot claims entitlement to summary judgment in her favor because Plaintiffs' claims against her are "untimely and time-barred". Plaintiffs, respectfully, disagree.

    *1.    Breach of Fiduciary Duty*

As to Plaintiffs' claim for breach of fiduciary duty, Defendant is correct that the statute of limitations in Nevada is three years. But that statute does not commence until the breach of fiduciary duty is discovered by the injured party. *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, at 1307 (9th Cir. 1991); *Hartford accident & Indemnity Co. v. Rogers*, 96 Nev. 576, at 580, 613 P.2d 1025 (1980); *Howard v. Howard*, 69 Nev. 12, 239 P.2d 584 (1952).

Here, the facts demonstrating Elliot's breach were not discovered until Plaintiff Guadalupe Olvera was safely with his daughter in California and until the Guardianship was terminated on or about April 26, 2013. Prior to that time, Plaintiffs did not have

1   access to the records necessary to determine FSR's involvement in the hiring, training and

2   supervision of Defendants Elliott and Johnson.  Until that time, Plaintiffs could not have

3   known the extent of Elliot's conversion or the breach of her fiduciary duty.  Accordingly,

4   the statute of limitations began to run on that date, and the Complaint was filed well

5   within the allotted time frame.

6          2.      *Negligence and Negligent Performance of an Undertaking*

7          Similar to the extension of the limitations period until discovery, a good faith

8   argument can be presented that the statute should be tolled, to the extent that Ms. Schultz

9   did not have access to her father, Mr. Olvera, or his records prior to April 26, 2013.  She

10  could not have determined whether or not Elliott had acted negligently, and Mr. Olvera

11  could not act on his own behalf, being the ward of a guardianship estate at the time.  In

12  short, an extension should be found to exist in these circumstances.

13         In *Prescott v. United States*, 523 F. Supp. 918 (D. Nev. 1981), the United States

14  District Court for the District of Nevada held that the limitations period for alleged

15  negligence leading to the plaintiff's exposure to radiation did not begin to run until the

16  plaintiff discovered his damage and discovered or should have discovered his cause of

17  action.  *Id.* at 940.

18         This holding is consistent with the Nevada Supreme Court's finding in *Sorenson*

19  *v. Pavlikowski*, 94 Nev. 440, 441, 581 P.2d 851, 852 (Nev. 1978).  In that case, a legal

20  malpractice action, the Nevada Supreme Court adopted the California rule that "an action

21  for legal malpractice sounding in tort does not occur until the client both sustains damage,

22  and discovers, or should discover, his cause of action."  *Id.*

23         The instant case is analogous to a legal malpractice action.  Defendants, including

24  Elliot, possessed certain duties to act in ways which would protect Mr. Olvera.  They fell

25  short in those duties, and the exact nature of their respective breaches could not have been

26  known by Ms. Schultz until the guardianship was terminated August 26, 2013.  The

27  statutes of limitation did not begin to run until that date.

28         3.      *Unjust Enrichment*

1    The same argument can and should be extended to Plaintiffs' unjust enrichment
2    claim. The cause of action cannot be deemed to have run until the Plaintiffs were given
3    access to Mr. Olvera's person and his records, including his bank records.

4          4.    *NRS 41.1395*

5          Similar to the breach of fiduciary duty, Plaintiffs respectfully submit that the
6    statute of limitations on a statutory claim accrues upon discovery of the violation. While
7    Plaintiffs concede that while there is no Nevada case authority directly supporting this
8    argument, such a finding would be consistent with the discovery provisions for fraud,
9    breach of fiduciary duty, damage to real property and other, similar, causes of action and
10   their respective statutes of limitation. Such a finding would also be consistent with the
11   authority cited above.

12   B.    <u>A Genuine Issue of Material Fact Exists as to Whether Defendant Elliott</u>
13         <u>Wrongfully Took Advantage of Mr. Olvera and Wrongfully Converted His Assets</u>
14         <u>to Her Own Use.</u>

15         Discovery in this matter is, admittedly, incomplete. Nevertheless, among the
16   documents that have been discovered are the checks attached hereto as Exhibit "2".
17   These are checks written by Cathy Elliott, to Cathy Elliott, and are drawn on Mr. Olvera's
18   account. They evidence an improper relationship between an employee of FSR and an
19   elderly married couple living in Sun City Anthem. They further evidence a relationship
20   in which Ms. Elliott felt free to write checks to herself on someone else's account.

21         This evidence, together with Ms. Schultz's Declaration attached hereto, accepted
22   as true and taken in the light most favorable to the Plaintiffs, demonstrates genuine issues
23   of material fact as to Ms. Elliott's actions, motives and pecuniary gain.

24         The writing and receipt of these checks by Ms. Elliott makes it likely that a
25   reasonable finder of fact could find in favor of the Plaintiffs on the breach of fiduciary
26   duty claim. Ms. Elliott assumed the role of fiduciary when she took control of Mr.
27   Olvera's checkbook to write herself checks. She breached that duty by putting her
28   interests ahead of his.

1    Similarly, the checks evidence unjust enrichment. There was nothing that Ms.

2  Elliott could or should have been doing with residents of Sun City Anthem that would

3  justify payments in excess of $2,400. There is nothing that would justify Ms. Elliott

4  taking Mr. Olvera from his home or keeping him from his family.

5    Ms. Elliott's Declaration, made under penalty of perjury, states that she never

6  received any money or property from Mr. Olvera. Exhibit "2" exposes the lie to that

7  declaration. Genuine issues of material fact exist. Summary judgment is not warranted.

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**IV.**

**Conclusion**

For all the foregoing reasons, Plaintiffs respectfully petition that this Court deny Defendant Elliot's Motion for Summary Judgment.

Dated this _____ day of September, 2015.

BOGGESS & HARKER

By: _____
D. Brian Boggess, Esq.
Nevada Bar No. 004537
7495 West Azure Drive, Suite 250
Las Vegas, Nevada 89130
Attorney for Plaintiffs

9

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I certify that on September 10, 2015, I caused the following document entitled: **PLAINTIFFS' OPPOSITION DEFENDANT CATHY ELLIOT'S MOTION FOR SUMMARY JUDGMENT** to be served by electronic filing to all counsel of record in this action.

An employee of Boggess & Harker